[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
By complaint dated September 7, 2000 the plaintiff, Jeanne B. Long commenced this action seeking a dissolution of marriage on the grounds of irretrievable breakdown and other relief. The defendant initially appeared through counsel and filed an answer and cross-complaint dated September 21, 2000. The plaintiff appeared with counsel on March 1, 2001 and proceeded on her complaint. The defendant appeared pro se. The plaintiff proceeded to testify and concluded her direct testimony. The defendant cross examined the plaintiff. Thereafter one of the parties four adult children was called to testify by the plaintiff. The defendant claimed he needed to make copies of certain documents and during the morning recess left the courtroom purportedly to make his copies. He never returned and a search of the courthouse failed to disclose his whereabouts. Subsequently, the plaintiff discovered her motor vehicle was missing and allegedly it was taken by the defendant. The court finds the defendant has failed to appear to conclude the trial. The court, after hearing the testimony and reviewing the exhibits, makes the following findings of fact.
The plaintiff, whose maiden name was Jeanne Burdick, married the defendant on July 26, 1969 in Sea Cliff, New York. She has resided continuously in the State of Connecticut for at least 12 months next preceding the filing of the complaint. All statutory stays have expired. The parties have four (4) children issue of the marriage all of whom are adults. No minor children have been born to he plaintiff since the date of the marriage. The court further finds that neither party has been the recipient of any aid from the State of Connecticut or any municipality thereof
Both parties appeared to be in good health. They live separate and apart having sold their marital residence pursuant to court order. The thrust of the plaintiffs' testimony concerned the defendant's spendthrift habits and his inability to share and to compromise. The defendant used credit cards to excess, purchased automobiles that were not needed, allowed the mortgage on the marital residence to become delinquent and engaged in larceny and forgery involving the plaintiff and his children. The causes for the breakdown of the marriage are the defendant's inability to control his spending and his attitude towards the plaintiff and his family as set forth herein.
Except for periods of time to bear and care for her children the CT Page 8498 plaintiff worked part-time and full time during significant periods of the marriage. She was the primary caregiver for the children. She is currently employed at Hamilton Sundstrand as a human resource assistant earning a gross weekly wage of $627 which approximates her highest earnings during the marriage. She works full time and with nominal increases has reached her maximum earning capacity. The defendant currently receives $1,523 per month as a pension from United Technologies Corporation. On his financial affidavit he lists his occupation as a mechanical engineer and his employer as "Retired/Unemployed UTC". His resume indicates he is an Electronics Packaging Design Engineer with extensive experience since 1961 together with college (but no degree), associations and awards. On November 30, 2000 the court (Barall, J.) heard extensive testimony by the defendant of his work experience both current and in the immediate past. He was never unemployed. Following 25 years with UTC he went to work for IBM until October 31, 2000. His base salary was $100,000 together with incentive compensation ranging from 2% to 10% of his base salary. He is currently looking for employment and has received job offers which he has turned down. In prior testimony the plaintiff stated that he would not return to work until after his marriage was dissolved. The court finds his current earning capacity to be $2,000 per week.
On February 23, 2001 the marital residence located at 15 Ridgewood Drive in Suffield, Connecticut was sold. After deducting the first and second mortgages and the usual and customary closing costs the parties had to pay additional charges especially approximately $7,300 for moving costs to remove and store the defendant's possessions. There remains in escrow with the court the sum of $34,834.
The court has considered all of the factors in Connecticut General Statutes Secs. 46b-81, 46b-82 and 46b-62 and other pertinent statutes, earning and earning capacity differentials, causes for the breakdown of the marriage and the consequences of the financial awards set forth below. Judgment shall enter dissolving the marriage of the parties on the ground of irretrievable breakdown. It is further ordered that:
 The defendant shall pay to the plaintiff the sum of $150.00 per week as periodic alimony. Said alimony shall be secured by an immediate wage execution.
The defendant shall notify the plaintiff immediately upon his employment and on any change in employment. He shall provide her proof of employment to include any employment letter and contract and his first four (4) pay stubs. Each party shall provide the other with a copy of their Federal tax return within seven (7) CT Page 8499 days of their submitting it to the IRS, but not later than by April 16th of each year for which he has an obligation to pay alimony. Any modification of alimony shall be retroactive to the day the defendant commences work, should he fail to provide timely notice of such to the plaintiff.
 Fifty percent (50%) of the defendant's monthly pension payment (i.e. $781.83), currently in payment status, in the total monthly amount of $1,563.66 shall be transferred to the plaintiff by Qualified Domestic Relations Order (QDRO). The signature of the plaintiff alone shall suffice on the QDRO. The defendant shall be precluded from changing his election of the plaintiff as the contingent annuitant of his pension. The court retains jurisdiction of the QDRO.
 The plaintiff shall keep her 401k from TIAA-CREFF and Hamilton Sundstrand in the approximate balance of $16,158.00 in its entirety.
 The defendant shall transfer to the plaintiff by QDRO the sum of $23,047.65 out of his UTC employee savings plan in the balance of $46,092.29. The signature of the plaintiff alone shall suffice on the QDRO. The court retains jurisdiction of the QDRO.
 The proceeds from the sale of the parties jointly owned real estate at 15 Ridgewood Drive, West Suffield, CT now held by the Clerk of the Superior Court, shall be divided sixty percent (60%) to the plaintiff and forty percent (40%) to the defendant. This amount is calculated as follows:
 Total net proceeds including committee fees, which fee of $4,525.00 is solely defendant's responsibility $34,683.76
 Adding in additional costs occasioned by and the responsibility of defendant: defendant's moving and storage costs $7,291.78 $41,975.54
Plaintiff's 60% of $41,975.54: $25,185.32
Defendant's 40% of $41,975.54: $16,790.22 less Committee Fee $4,725.00 less defendant's moving and CT Page 8500 storage fee $7,291.78 $4,773.44
 Accordingly, the distribution of proceeds, now held by the Clerk's Office, from the sale of 15 Ridgewood Drive, West Suffield, CT shall be as follows:
To Plaintiff — Jeanne B. Long $25,185.33
To Hamilton Sundstrand FCU Visa $ 4,773.43
To Defendant — James W. Long, Jr. $ 0.00
To Committee (Atty. Joseph Flynn) $ 4725.00
TOTAL PROCEEDS $34,683.76
 The additional costs occasioned by the sale of the said real estate above and beyond those customary costs (i.e. Attorney Joseph Flynn committee billing $4,725.00, which is outstanding, and the defendant's mover/storage fees, which were paid at closing) shall be borne solely out of the defendant's share of the proceeds from the sale of the real estate.
 Attorney Joseph Flynn's committee fees shall be paid in the amount of $4,725.00 out of defendant's proceeds.
 The plaintiff shall pay and indemnify and hold the defendant harmless on the following debt: American Eagle Visa.
 The defendant shall pay and indemnify and hold the plaintiff harmless on the following debts:
Hamilton Sundstrand FCU Visa Account #4206 3600 0000 0663
American Express Account #3785-150117-1100
First USA Account #4417 1685 05103873
Citgo Account #180-800-559
American Express Account #3722-869565-72007
Amoco Account #475 686 0930 CT Page 8501
Sunoco Account #50133473715
Home Depot Account #5192450036873
Mobil MCFC National Bank Account #8744653422
Target Account #9-184-492-157-90
CompUSA Account #7001-1151-0163-3006
Citibank Account #4339 0785-0902 3396
Texaco Account #13-230-3590-5
 Any and all other debts not specifically listed on plaintiff's financial affidavit of 3/1/01.
 The joint Hamilton Sundstrand FCU Visa account listed above shall be paid the sum of $4,773.34 from the husband's share of the proceeds of the sale of 15 Ridgewood Drive in West Suffield, CT, which proceeds are being held by the Clerk of the Court.
 Under Connecticut General Statute Section 48b-81, the court confirms and ratifies the pendente lite order of the Hon. Herbert Barall for the sale of 15 Ridgewood Drive, West Suffield, CT.
 The plaintiff shall have sole title to and ownership of the 1992 Acura Legend. There is no loan of this vehicle.
 The defendant shall have sole title and ownership of the 2000 Acura CL, the 1999 Acura CL, the 1997 Acura Integra and the BMW all of which are currently in his name. The defendant shall pay and indemnify and hold the plaintiff harmless on any loans associated with these four (4) vehicles.
 All household furnishings and personal property shall remain with the party now in possession. Bank accounts, as per the parties' financial affidavits on 3/1/2001, shall remain with the parties now in possession.
CT Page 8502 Caruso, J.